EDGAR GRAHAM, COMPTROLLER, *v.* J. A. ENGLAND.*

(*Knoxville*. September Term, 1926.)

Opinion filed October 1, 1926.

1. CONSTITUTIONAL LAW. Judge. Chancellor, or attorney-general.. Contest. Temporary appointments.

The Acts of 1870-1, ch. 72, authorizing the Executive to appoint a temporary judge pending a contest in the election of Judge, Chancellor, or Attorney-general, is a valid enactment. The sound policy of the Act is beyond question. (Post, p. 440.)

2. SAME. Same. Same. Construction.

Said Act is not invalidated by the provision of the Constitution that, "Every officer shall hold his office until his successor is elected, or appointed and qualified" (art. 7, sec. 5.) The Act undertakes to provide a method for the selection of the immediate successor of a Judicial officer, when the term of that officer has expired, and the machinery provided by the Constitution and the statutes has failed for the time to produce a successor, the election result being in contest. (Post, p. 441.)

Cases cited and distinguished: State ex rel. v. Malone, 131 Tenn., 149; Conger v. Roy, 151 Tenn., 30; State v. Campbell, 76 Tenn. (8 Lea), 74; Constitution, art. 7, sec. 5, art. 7, sec. 2; Thompson's-Shannon's Code, sec. 401 (Code 1858, sec. 325); Sections 1145, 1146 (Code 1858, secs. 818, 819.)

3. SAME. Same. Same. Same.

The constitutional protection thrown around an officer is that he shall hold for his stipulated term. This is for his benefit; the holdover provision is for the benefit of the public and to prevent interruption in the public service. (Post, p. 441.)

Cases cited: Rightmire v. Camden, 50 N. J. L., 43; Johnson v. Mann, 77 Va., 271; State v. Cocke, 54 Tex., 485; and cases collected in Note, 50, L. R. A. (N. S.), 365.

**Questions reserved.**

Whether the appointment of a temporary judge under said Act is discretionary with the executive, or whether the provisions of the Act are mandatory; and, whether the Act is intended for a case where the incumbent judge was not a candidate for re-election, and the contest over the election is between other parties. (Post, p. 442.)

Cases cited: Gold v. Fite, 61 Tenn. (2 Bax.), 237; Turney, Admr., v. Dibrell, 62 Tenn. (3 Bax.), 235.

**4. SAME. Same. Same. Salary of temporary judge.**

Under Act 1870-71, ch. 73, the temporary judge is entitled to the same compensation as a regular judge. This compensation is in addition to that provided for the regular judge. (Post, p. 443.)

**5. SAME. Same. Same. Salary of successful contestee.**

The person finally entitled to have been elected judge will be entitled to the full salary for the term to which he was elected. The right of salary follows the title to the office. (Post, p. 443.)

Cases cited: Memphis v. Woodward, 59 Tenn. (12 Heisk.), 499; Currey v. Wright, 77 Tenn. (9 Lea), 246; State ex rel. v. Grindstaff, 144 Tenn., 554.

---

*Headnotes 1. Judges, 33 C. J., section 204 (Anno.); 2. Judges, 33 C. J., section 40; 3. Judges, 33 C. J., section 75; 4. Judges, 33 C. J., section 66 (Anno.).

## FROM DAVIDSON.

Appeal from the Chancery Court of Davidson County. —Hon. Jas. B. Newman, Chancellor.

Proceeding instituted by the Comptroller of the State to obtain a declaration of his duties under certain constitutional and statutory provisions.

CHAS. L. CORNELIUS, Attorney-General, for appellant.

J. L. WHITE and E. C. KENNEDY, for appellee.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This proceeding was instituted by the comptroller of the state to obtain a declaration as to his duties under certain constitutional and statutory provisions. The principal question presented is the validity of chapter 73 of the Acts of 1870-71. The rights of the defendant England herein are based upon that statute, and a *bona-fide* controversy has arisen between the said England and the comptroller. The chancellor was of opinion, and so declared, that the aforesaid statute was unconstitutional, and defendant England has appealed.

In the August election of 1918, N. R. Barham was elected judge of the Twelfth judicial circuit for the term of eight years, beginning September 1, 1918, and has since served in that capacity. At the August election of 1926, the said Barham was a candidate for re-election and was opposed by W. H. Denison. Upon the face of the returns Denison was elected, but Barham instituted a suit to contest the election, and the Governor, being apprised of said contest, declined to issue a commission to either Barham or Denison. Acting upon the advice of the Attorney-General and in pursuance of the provisions of chapter 73 of the Acts of 1870-71, the Governor appointed defendant, J. A. England, to act as temporary judge pending this controversy. The primary dispute herein presented is upon the right of said England to receive

compensation from the state for his services as said temporary judge, and the comptroller asks a declaration from the court as to whether he should issue a payable warrant to said England upon this account.

Section 1 of chapter 73 of the Acts of 1870-71 is as follows:

"Section 1. Be it enacted by the General Assembly of the State of Tennessee, that the Governor be, and is hereby authorized to appoint a temporary judge, chancellor or Attorney-General in all cases where a contest has arisen, or may hereafter arise, in the election of any of said officers; and that they hold said offices and have all the power and jurisdiction pertaining to the offices to which they are respectively appointed, until the contest is judicially determined and the regularly elected officers duly qualified and commissioned; and that they be, and are hereby clothed with the same power, and shall receive the same compensation as is allowed said officers in other cases, to be paid out of the state treasury upon a warrant of the comptroller."

The argument against the constitutionality of the act just quoted is based upon the provision of section 5 of article 7 of the Constitution, that "ever officers shall hold his office until his successor is elected or appointed, and qualified." The reasoning is that the Governor has no authority to appoint a judge unless there is a vacancy in the office; that Judge Barham is entitled, under his commission of 1918, to hold the office of judge of the Twelfth judicial circuit until his successor is elected or appointed and qualified; and that the election of 1926 is being contested, and that no successor to Judge Barham is yet eligible to qualify nor has qualified. It is therefore main-

tained that the appointment of Judge England by the Governor cannot be sustained, and that the statute authorizing such appointment is unconstitutional.

Authorities chiefly relied upon to uphold the foregoing are the cases of *State ex rel.* v. *Malone,* 131 Tenn., 149, and *Conger* v. *Roy,* 151 Tenn., 30.

In *State ex rel.* v. *Malone,* supra, the sheriff-elect of Smith county died between the date of his election on the first Thursday in August, 1914, and the date when he should have qualified September 1, 1914. The quarterly county court conceived that a vacancy thus arose in the office of sheriff of Smith county, and at a meeting of that body called for the purpose September 14, 1914, the county court undertook to fill the supposed vacancy by the election of a sheriff. This court held that there was no vacancy in the office of sheriff upon the facts stated, and that the old sheriff was empowered to hold over.

In *Conger* v. *Roy,* supra, there was a contest over the election of the county court clerk of De Kalb county. Upon a hearing of the cause before the county judge of said county, the election was declared to be void. This court held that the decree of the county judge declaring said election void did not create a vacancy in the office of county court clerk which the quarterly county court was entitled to fill, and that the old clerk held over until the next biennial election.

Both these decisions were rested on section 5 of article 7 of the Constitution above quoted, and were to the effect that the old officers were licensed to hold over until their successors qualified, and that there was no vacancy in office to be filled by the quarterly county court as long as the old officers properly held over.

Chapter 73 of the Acts of 1870-71 does not purport to deal with the case of a vacancy in office, nor undertake to prescribe a method of filling a vacancy in office. The validity of the act is not, therefore, to be tested by the rules laid down in the cases just mentioned. Chapter 73 of the Acts of 1870-71, on the contrary, undertakes to provide a method for the selection of the immediate successor of a judicial officer, when the term of that officer has expired, and the machinery provided by the Constitution and the statutes has failed for the time to produce a successor—the election result being in contest.

In *State ex rel.* v. *Malone* and in *Conger* v. *Roy,* the county court undertook to proceed under constitutional and statutory provisions authorizing the filling of vacancies. Constitution, article 7, section 2; Thompson's-Shannon's Code, section 401 (Code 1858, section 325); Thompson's-Shannon's Code sections 1145, 1146 (Code 1858, sections 818, 819); *State* v. *Campbell,* 76 Tenn., (8 Lea) 74.

The sound policy of chapter 73 of the Acts of 1870-71 is beyond question. Much litigation arises out of a challenged election, criminal prosecutions for fraudulent practices therein, and cases involving the title to various offices and other civil rights. It is not desirable that such matters presenting questions upon the conduct of an election be submitted to a judicial officer, whose title to office depends upon the solution of the same questions in another suit.

We do not think that such a statute offends any clause of the Constitution. Section 1 of article 4 of that instrument provides that "the General Assembly shall have

power to enact laws . . . to secure the freedom of elections and the purity of the ballot box.''

Section 4 of article 6 of the Constitution requires the election of judges of the circuit and chancery courts and of other inferior courts, prescribes certain qualifications for the judge, and declares: ''His term of service shall be eight years.'' As heretofore stated, such judge is to hold office ''until his successor is elected or appointed, and qualified.'' Constitution, article 7, section 5.

The constitutional protection thrown around an officer is that he shall hold for his stipulated term. This is for his benefit. The hold-over provision is for the benefit of the public and to prevent interruption in the public service. *Rightmire* v. *Camden*, 50 N. J. Law, 43; *Johnson* v. *Mann*, 77 Va. 271; *State* v. *Cocke*, 54 Tex. 485, and cases collected in not 50 L. R. A. N. S.) 365.

Since the tenure of an officer holding over is in the public interest and not by reason of any title he has to the office, his term having expired, we see no reason why the legislature may not in the public interest displace the hold-over and temporarily devolve the duties of the office upon another.

The remark in *State ex rel.* v. *Malone,* supra, repeated in *Conger* v. *Roy,* supra, that ''there can be no appointment in an elective office until a vacancy occurs,'' was not made with respect to judges. The court was dealing with county offices, and our statutes only authorize appointments to these offices when there are vacancies. There is, however, ample authority, constitutional and statutory, for the appointment of judges in cases of absence, incompetency, and sickness, and the act here assailed deals with a like emergency.

The Constitution established a judicial term of eight years. It contemplated a successor to every judge, chosen by election, at the end of this term. No specific provision was made for the occupancy of a judicial office pending an election contest with reference thereto. No restriction was placed by the Constitution upon the power of the legislature to deal with such a situation. The incumbent judge holds "until his successor is elected or appointed and qualified." Chapter 73 of the Acts of 1870-71 is a legislative plan for securing his successor, when the constitutional plan has been arrested. It seems to us a valid plan. It does not infringe the rights of the judge in office, nor of any one else.

Whether the appointment of a temporary judge under chapter 73 of the Acts of 1870-71 is discretionary with the Governor, or whether the provisions of the act are mandatory, is a question not here before us. The Governor has acted. Likewise we need not decide whether the act is intended for a case where the incumbent judge was not a candidate for re-election and the contest over the election is between other parties. In the case before us, the incumbent judge was a candidate for re-election and is himself a party to the contest.

While we utterly disclaim any suggestion of a doubtful motive on the part of contestant in this case, we are satisfied it was never intended by section 5 of article 7 of the Constitution to bring about a situation in which a judge by his own act might prolong his tenure of office. It could not have been intended to deny the legislature the power to prevent this result by a law removing inducement to any ill-advised election contest.

*Gold.* v. *Fite,* 61 Tenn. (2 Bax.), 237, and *Turney, Adm'r,* v. *Dibrell,* 62 Tenn. (3 Bax.), 235, in which it was held that a contest over a judicial election did not create a vacancy in the judicial office and authorize an appointment by the Governor, as for a vacancy, dealt with an appointment made under such circumstances October 21, 1870. Chapter 73 of the Acts of 1870-71 was not passed until January 28, 1871, and was approved by the Governor February 1, 1871.

Under chapter 73 of the Acts of 1870-71 the temporary judge is entitled to the same compensation as a regular judge. This compensation is in addition to that provided for the regular judge.

We are of opinion that no compensation, other than that paid to the temporary judge, can be made to any one until the election contest is determined. The person finally declared to have been elected judge will be entitled to the full salary for the term to which he has been elected. The right to this salary follows the title to the office. This is well settled in Tennessee. *Memphis* v. *Woodward,* 59 Tenn., (12 Heisk.), 499; *Currey* v. *Wright,* 77 Tenn. (9 Lea.), 246; *State ex rel* v. *Grindstaff,* 144 Tenn., 544.

It results, therefore, that Judge England should be paid the compensation provided for circuit judges while he serves under this temporary appointment. No other payment should be made until the election contest is settled, and payment should then be made to the successful party as from the beginning of the term to which he is found to have been elected. It is so declared.